IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| as Broadcast Licensee of the April 19, 2008 | § | |
| UFC 83: Serra/St. Pierre II Event, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-00809-L |
| | § | |
| 1) MOCTEZUMA CLUB, INC., Individually | § | |
| and d/b/a AZTECA CLUB a/k/a AZTECA | § | |
| SPORTS BAR & GRILL; and | § | |
| 2) ARTURO NERI, JR., Individually and d/b/a | § | |
| AZTECA CLUB a/k/a AZTECA SPORTS BAR | § | |
| & GRILL, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to FED. R. CIV. P. 56, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") files

*Plaintiff's Motion for Summary Judgment and Brief in Support.*

### A. INTRODUCTION

1.      This is an "Anti-Piracy" case involving the Federal Communications Act of 1934,

as amended ("Communications Act"), which combats against the piracy of radio and television

signals. *See* 47 U.S.C. §§ 553 and 605.  In this case, Defendants 1) Moctezuma Club, Inc.,

Individually and d/b/a Azteca Club a/k/a Azteca Sports Bar & Grill; and 2) Arturo Neri, Jr.,

Individually and d/b/a Azteca Club a/k/a Azteca Sports Bar & Grill (collectively "Defendants")

illegally intercepted the closed-circuit telecast of the April 19, 2008 Ultimate Fighting

Championship 83: Matt Serra v. Georges St. Pierre II Welterweight Championship Fight

Program, including undercard or preliminary bouts (the "Event") and exhibited the Event in

Defendants' Establishment, Azteca Club a/k/a Azteca Sports Bar & Grill (the "Establishment"), without paying the licensing fee to Plaintiff.

B. ARGUMENTS & AUTHORITIES

2.    THE COMMUNICATIONS ACT:  The unauthorized interception and broadcast of either satellite or cable transmissions violates 47 U.S.C. §§ 553 and 605.  Thus, all acts of unlawful interception, receipt and broadcast of the signal of the Event were in violation of the Communications Act.  In order to deter the unlawful use of communications such as the Event, Congress specifically designed the Communications Act to provide "both prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control."  *See* TRADEMARK & SATELLITE ACTS, Pub.L. No. 100-667, 1988 U.S.C.C.A.N. (102 Stat.), 5577, 5658; *see also United States v. Scott*, 783 F. Supp. 280, 281 (N.D. Miss. 1992).  The Communications Act includes severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications.  *See Scott*, 783 F. Supp. at 281.  In 1988, in an effort to further deter theft, Congress amended the Communications Act to provide for more severe penalties for violations.  *See* TRADEMARK & SATELLITE ACTS, *supra* at 5657.  Accordingly, a party aggrieved under the Communications Act may recover statutory damages.  *See* 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 605(e)(3)(C)(i)(II); 47 U.S.C. § 605(e)(3)(C)(ii) and § 553(c)(3)(B).

3.    Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events.  (Exhibit "A" at p. 2).  Plaintiff possessed the exclusive proprietary rights to exhibit and sublicense the right to exhibit the Event at commercial establishments.  (Exhibit "A" at p. 2; Exhibit "A-1").  Through a licensing agreement with the promoter of the Event, Plaintiff was licensed to exhibit the Event at closed circuit locations, such

as theaters, arenas, clubs, lounges, restaurants and other commercial establishments throughout the State of Texas.  (Exhibit "A" at p. 2; Exhibit "A-1").  In Texas, the Event was legally available to commercial establishments **only** through an agreement with Plaintiff.  (Exhibit "A" at p. 2).

4.      STRICT LIABILITY STATUTE:  The Communications Act is a strict liability statute. To establish liability, Plaintiff is required to prove only two elements: (1) the Event was shown in Defendants' Establishment; and (2) the exhibition of the Event at Defendants' Establishment was not authorized by Plaintiff.  *See KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999).

5.      PROOF OF STRICT LIABILITY ELEMENTS:  On the date of the Event, Defendants or their agents, servants and/or employees intercepted and received or assisted in the interception and receipt of the live telecast of the Event.  *See* Exhibit "A" at p. 3; Exhibit "A-2"; Exhibit "A-3").  Defendants then broadcast or assisted in the broadcast of the Event to the patrons at Defendants' Establishment for viewing therein.  *See* Exhibit "A" at p. 3; Exhibit "A-2"; Exhibit "A-3").  The Defendants broadcasted the Event to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff.  (*See* Exhibit "A" at p. 3).  Further, Defendants admit they held the TABC liquor license/permit for the Establishment on the night of the Event, were owners of the Establishment; had a right and ability to supervise the activities of the Establishment; and had an obvious and direct financial interest in the activities of the Establishment (*See Plaintiff's Original Complaint*, Doc. 1, ¶ 2-3; *Defendants' Original Answer*, Doc. 2, ¶¶ 2-3.  Therefore, Defendants are responsible for the exhibition on the Event in the Establishment.  *See Joe Hand Promotions, Inc. v. Roberson Mgmt*., 2006 U.S. Dist. LEXIS 56237, at *2-4 (S.D. Tex. 2006); *J&J Sports Productions, Inc. v. Garcia*, 2009 U.S. Dist. LEXIS

72233, at * 9-10 (S.D. Tex. Aug. 14, 2009); *J&J Sports Prods. v. Q Café, Inc.*, 2012 U.S. Dist.

LEXIS 8700 at *11 (N.D. Tex. Jan. 25, 2012)(Citing *KingVision Pay-Per-View, Ltd. v. Olivares*,

02 Civ. 6588, 2004 U.S. Dist. Lexis 6261, at *13 (S.D.N.Y. April 5, 2004); *J&J Sports Prods. v.*

*Cindy's Gone Hog Wild, Inc.*, 2011 U.S. Dist. LEXIS 97501 at * 4-5 (W.D. Tex. Aug. 29, 2011)

(Sparks, J.).

6.      STATUTORY DAMAGES UNDER 47 U.S.C. § 605: Statutory damages are appropriate

where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills,*

*Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981).  The lack of adequate proof of any particular

element causes the Court to rely, within its discretion, on the statutory limitations. *See F.W.*

*Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).  In the instant case, it

would be impossible to determine the full extent of the profits lost by Plaintiff and the additional

damages sustained by Plaintiff as a result of Defendants' unlawful actions.  Accordingly,

Plaintiff elects to receive statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

7.      Because the statute defining statutory damage awards for violations of the

Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act") is similar to the

Communications Act,[1] its case law is instructive for the determination of the amount of statutory

damages to which Plaintiff is entitled. *See F.W. Woolworth Co.*, 344 U.S. at 233.

8.      The sublicense fees which Plaintiff charges to an authorized commercial

establishment are based upon specific market factors, including but not limited to the marquee

value of the boxing participants, the method of delivery to the residential consumer, the capacity

of the commercial establishment, and any guarantees required by the promoter.  Applying the

---

[1] *See* 17 U.S.C. § 504(c)(1).

courts' analysis from their decisions under the Copyright Act,[2] in the instant case, the lost income from the sale of the Event to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled for the Defendants' wrongful acts.  When Congress enacted the Statute, it was specifically cognizant of the problems of theft of various wire communications, including closed-circuit programming, such as the Event.[3]  Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise would be receiving payment for their programming or descrambling devices.  *See, Scott*, 783 F. Supp. 280, 281 (*quoting* H. Rep. No. 98-934, *supra* 1984 U.S.C.C.A.N. at 4746).

9.     In addition to the lost revenue which would have been derived from the delivery and exhibition of the Event to Defendants' Establishment and their patrons, Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event to Defendants' Establishment and their patrons as well as the value of "business investment, business opportunities and goodwill."  *See American Television and Communications Corp. v. Floken, Ltd.,* 629 F. Supp. 1462, 1466 (M.D. Fla. 1986).

10.     The *Affidavit of Thomas P. Riley* details the types of damages suffered by Plaintiff, including, among others: (1) the loss, and continued loss, of customers; and (2) loss of

---

[2]  Statutory damages under the Copyright Act should serve to compensate the copyright owners and to provide a detriment to would be infringers.  *See Lottie Joplin Thomas Trust*, 592 F.2d at 657; *Lauratex*, 519 F. Supp. at 732; *see also Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991) (identifying factors to consider in determining a statutory damage award).

[3]  *See* Cable Communications Policy Act of 1984, House Report No. 98-934, 1984 U.S.C.C.A.N. §§ 5-6, 4655, 4720; *see also Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.*, No. CV 88-2834, 1991 U.S. Dist LEXIS 4874 (E.D.N.Y. March 20, 1991) ("This section [553] was meant to address the 'major problem' of theft of cable services.") (citing H.R. Rep., 934, 98th Cong., 2d Sess. 83 (1984)).

revenue through decreased purchases of sublicensing fees.  (Exhibit "A" at pp. 4-5).  Each patron

of Defendants' Establishment is lost as a future patron of authorized broadcasts.  *See Cox Cable*

*Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983).  But for the Defendants'

unauthorized broadcast of the Event, all or some of the patrons of Defendants' Establishment

would have become paying patrons and directly increased the fees paid to Plaintiff by its

authorized commercial establishments.  Further, Plaintiff has suffered damage to its goodwill and

reputation and loss of its right and ability to control and receive fees for the transmission of the

Event.  (Exhibit "A" at p. 5); *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F.

Supp. 1159, 1161 (D. Ma. 1986).

     11.     When negotiating sublicense fees, Plaintiff generally represents to legitimate

commercial establishments the locations of other authorized commercial establishments licensed

to receive the programming.  (Exhibit "A" at p. 5).  Therefore, when an unauthorized

commercial establishment intercepts, receives and broadcasts closed-circuit programming, such

as the Event, Plaintiff's reputation and goodwill suffers from what appears like a

misrepresentation.  (Exhibit "A" at p. 5).  Plaintiff should receive compensation from Defendants

for these losses suffered.  Furthermore, an incalculable element of damages is the ill-will and

possible loss of future business from legitimate commercial establishments which refuse to pay

sublicense fees because they cannot compete with unauthorized commercial establishments

which steal closed-circuit programming, such as the Event.  (Exhibit "A" at p. 5).

     12.     The continued viability of Plaintiff as a business concern depends upon the

willingness and ability of legitimate commercial establishments to pay sublicense fees for the

right to broadcast closed-circuit sports and entertainment programming, such as the Event.

(Exhibit "A" at p. 5).  If such programming is made available to the public for no fee at

unauthorized commercial establishments which have not purchased the right to broadcast such

programming, legitimate commercial establishments will find no reason to purchase the right to

legally broadcast this type of programming.  (Exhibit "A" at p. 5).

13.     Plaintiff's legitimate business operations are being threatened by Defendants'

actions.  If rampant theft of service is allowed to go unpunished and Plaintiff and similar

distributors of protected communications continue to suffer losses as a result of the theft, these

businesses could be forced to curtail distribution of this programming, thereby depriving the

people of the State of Texas of the ability to view these sports and entertainment events.

14.     Given the benefits which Defendants received from the broadcast of the Event

and given the additional damages which Plaintiff has suffered, it is fair and reasonable to assess

against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00 against

Defendants for their violation of the Communications Act by the exhibition of the Event.

DAMAGES FOR WILLFUL ACT
UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

15.     As its second basis for relief, Plaintiff requests damages pursuant to 47 U.S.C. §

605(e)(3)(c)(ii) because Defendants' actions were willful and "for purposes of direct or indirect

commercial advantage or private financial gain."  In *ON/TV of Chicago v. Julien*, 763 F.2d 839,

844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the

Statute as "disregard for the governing statute and an indifference to its requirements."  *Id*. at 844

(*quoting TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).  The Court may

award additional damages of up to $100,000.00 violation under 47 U.S.C. § 605(e)(3)(C)(ii) and

$50,000.00 under § 553(c)(3)(B) for each willful violation of the Communications Act.

16.     Because of the absence of any way in which Defendants could have "innocently"

accessed the broadcast of the Event, it is apparent that Defendants specifically and willfully

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 7
n:/802074/pdg/MSJ(federal)

acted to illegally intercept the transmissions of the Event for Defendants' commercial

advantage.[4]  Defendants knew that it was wrong to receive, intercept and divert the signal of the

Event and to broadcast it in Defendants' Establishment.  *See KingVision Pay-Per-View, Ltd. v.*

*Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *see also Time Warner Cable v.*

*Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness

the court stated, "**there can be no doubt that the violations were willful and committed for**

**purposes of commercial advantage and private gain.  Signals do not descramble**

**spontaneously, nor do television sets connect themselves to cable distribution systems**".

(emphasis added).  Yet, in total disregard of the Communications Act, Defendants intercepted

and received the transmission and broadcast it to the patrons of Defendants' Establishment.

Accordingly, Defendants' actions were willful and Plaintiff is entitled to additional damages.

17.     In the instant case, Defendants' actual knowledge that Defendants' acts were

wrongful should be sufficient to demonstrate that Defendants' acts were willful.  *See KingVision*

*Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex.

March 30, 2001) (Briones, J.) ("**While Defendants may not have been well-versed in the**

**statutory restrictions on the unauthorized interception of satellite transmissions, the Court**

**finds that there must have been some knowledge on the part of Defendants that such**

**interception could not be had for free**.") (emphasis added).

18.     Regarding the second prong of the damages test under 47 U.S.C. §§ 553(c)(3)(B)

_____

[4]     *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program.  Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. **The Court finds that employing any one of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages**.") (emphasis added).

and 605(e)(3)(C)(ii), it is patently obvious that Defendants' actions were "for the purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. §§ 553(c)(3)(B) and 605(e)(3)(C)(ii).  As stated by Congress,

> [i]t is further intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly by both the courts in deciding actions, and the Department of Justice in pursuing actions, under this section.  Those who willfully violate subsection (a) and directly or indirectly enjoy commercial gain from those violations, may be reached.

CABLE COMMUNICATIONS POLICY ACT, P.L. 98-549, 5 U.S. Cong. News, '84 Bd. Vol.-8, 4745, 4750.

19.     Defendants' purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial advantage by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights, while avoiding proper payment to Plaintiff.[5] Courts determining willfulness damages have considered the following factors, such as here, where Defendants

- Charged a cover charge:  *See Kingvision Pay-Per-View, Ltd. v. Zalazar*, 2009 U.S. Dist. LEXIS 71559, at *14 (S.D.N.Y. June 11, 2009) (charging of a "cover charge" is evidence of willfulness and commercial advantage); *Garden City Boxing Club, Inc. v. Sacks*, 2008 U.S. Dist. LEXIS 30332, at *6-7 (S.D. Tex. Apr. 10, 2008) (Tagle, J.) ("The Event was rebroadcast to the bar's customers who paid a twenty dollar ($20) cover charge; therefore, this act of cable piracy was for the purpose of direct or indirect commercial advantage.");
- Sold food and beverages:  *See KingVision Pay-Per-View, Ltd. v. Hay Caramba Mexican Rest.*, Civil Action No. H-02-1311 (S.D. Tex. March 10, 2003 (Hoyt, J.) *Memorandum and Order* (Doc. 14) ("It is the Court's view that the defendant

---

[5]  *See*, *KingVision Pay-Per-View, Ltd. v. Hay Caramba Mexican Rest.*, Civil Action No. H-02-1311 (S.D. Tex. March 10, 2003 (Hoyt, J.) *Memorandum and Order* (Doc. 14) ("It is the Court's view that the defendant profited even if it did not charge a cover by selling food and beverages to the patrons who expected and did view the broadcast."); *J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, Civil Action No. A-08-CA-691-SS (W.D. Tex. April 17, 2009) (Sparks, J.) *Order* (Doc. 13) ("The undisputed evidence establishes the Event was broadcast to paying customers of Defendant's commercial establishment and thus the violation was for commercial advantage or private gain."); *Garden City Boxing Club, Inc, v. Guzman*, 2005 U.S. Dist. Lexis 7954, at * 9 (S.D.N.Y. April 26, 2005) ("[The exhibition of the fight undoubtedly generated commercial profits for the defendant.").

profited even if it did not charge a cover by selling food and beverages to the patrons who expected and did view the broadcast.");

- Broadcasted the Event on multiple televisions:  *Cf. Time Warner Cable of New York City v. Taco Rapido Restaurant,* 988 F. Supp. 107, 111-112 (E.D.N.Y. 1997) (showing Event on multiple televisions is evidence of commercial advantage); *J&J Sports Productions, Inc. v. Perales*, Civil Action No. SA-08-CA-373-FB (W.D. Tex. Jan. 21, 2009) (Biery, J.) *Order Granting Plaintiff's Motion for Summary Judgment and Final Judgment* (event telecast to the patrons of defendant's establishment on three televisions, warranted imposition of additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii));

- Broadcasted the Event on big-screen televisions:  *See Joe Hand Promotions, Inc. v. Villalobos*, 2009 U.S. Dist. LEXIS 85183 at *6 (E.D. Cal. Sept. 16, 2009) ("Given the size of the establishment at issue, its location both in a relatively urban city and adjacent to an even larger urban city and the fact that the Program was shown on a large projection screen, the Court finds that the violations likely had more than a minimal impact."  The Court awarded damages totaling $60,000.); and

- Showed the Event in an Establishment in good condition: See *J&J Sports Prods. v. Tilakamonkul*, 2011 U.S. Dist. LEXIS 62120 at *9-10 (E.D. Cal. June 10, 2011).

## ATTORNEYS' FEES & COSTS

20.    Plaintiff requests an award of attorneys' fees and costs pursuant to 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii) and as provided in the *Affidavit of Andrew R. Korn*.  Pursuant to Sections 553(c)(2)(C) and 605(e)(3)(B)(iii), the award of attorney's fees and costs is mandatory.  Pursuant to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..." [6]

---

[6]  *See J & J Sports Prods. v. Pure Lounge of Columbia, LLC*, 2012 U.S. Dist. LEXIS 8277, at *14 (D.S.C. Jan. 25, 2012) ("Plaintiff has submitted affidavits of its South Carolina counsel and its California counsel in support of its request for costs. The costs include the filing fee, payments for investigative services, service of process and other miscellaneous expenses. The court finds the costs reasonable…"); *Joe Hand Promotions, Inc. v. Marshall*, 2012 U.S. Dist. LEXIS 12820, at * 11 (M.D. Tenn. Feb. 1, 2012) (Citing 47 U.S.C § 605(e)(3)(B)(iii) and awarding Plaintiff attorneys fees, filing fees, service of process costs, and investigation fees.); *see generally, J&J Sports Prods., Inc. v. Garcia*, Civil Action No. 4:11-cv-02390 (S.D. Tex. March 22, 2012) (Miller, J.) (*Final Default Judgment*)("§605(e)(3)(C)(i)(II) mandates that courts award attorney's fees and allows courts to award full costs.").

<u>P<small>RAYER</small></u>

Plaintiff respectfully requests that the Court sign and cause to be entered a judgment for

Plaintiff against Defendants, jointly and severally, awarding Plaintiff:

(1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from
        Defendants, jointly and severally, in the amount of $10,000.00;

(2)     Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from
        Defendants, jointly and severally, in the amount of $50,000.00;

(3)     Attorneys' fees from Defendants, jointly and severally, in the amount of
        one-third (1/3) of recovery, or alternatively the hourly time presented in
        the *Affidavit of Andrew R. Korn* (for prosecution of this case through
        summary judgment); along with attorney's fees for post-trial and appellate
        services;

(4)     A permanent injunction that enjoins Defendants from ever intercepting or
        exhibiting an unauthorized program in violation of the Federal
        Communications Act;

(5)     Post-judgment interest at the highest lawful rate; and

(6)     Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

By: _____

Andrew R. Korn
Attorney-in-charge
State Bar No. 11683150
David M. Diaz
State Bar No. 24012528

Korn, Bowdich & Diaz, L.L.P.
4221 Avondale Ave.
Dallas, Texas 75219
(214) 521-8800 - Telephone
(214) 521-8821 – Facsimile
www.kbdtexas.com

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

On 18th day of May, 2012, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or *pro se* parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Peter F Sheridan                    Via ECF
101 Third Street
PO Box 488
Sweetwater, TX 79556

ATTORNEY FOR DEFENDANTS

By: _____

ANDREW R. KORN